UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Theresa Gatten,

      Plaintiff,

v.

Life Time Fitness, Inc.

      Defendant.

**COMPLAINT**
**(JURY TRIAL DEMANDED)**

Court File No. _____

---

For her Complaint against Defendant, Life Time Fitness, Inc., Plaintiff, Theresa Gatten, by and through her attorneys, Nichols Kaster, PLLP, states and alleges the following:

## THE PARTIES

1. Plaintiff, Theresa Gatten ("Gatten" or "Plaintiff"), is a Minnesota resident.

2. Defendant, Life Time Fitness, Inc., ("Life Time" or "Defendant") is a Minnesota corporation with its headquarters located at 2902 Corporate Place, Chanhassen, Minnesota.

3. During all relevant times herein, Plaintiff was an "employee" of Life Time within the meaning of 42 U.S.C. § 2000e(f) and Minn. Stat. §363A.03(15). Life Time was her "employer" within the meaning of 42 U.S.C. § 2000e(b) and Minn. Stat. § 363A.03(16).

## JURISDICTION & VENUE

4. This Court has jurisdiction under 28 U.S.C. § 1331 because Plaintiff alleges that Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII").

5. Plaintiff invokes the supplemental jurisdiction of the United States District Court pursuant to 28 U.S.C. § 1367 to hear her state law claim under the Minnesota Human Rights Act, Minn. Stat. § 363A.01 et seq. ("MHRA").

6. Venue is proper under 28 U.S.C. § 1391 because the unlawful practices described herein have been committed in the District of Minnesota. The employment records relevant to those practices are, on information and belief, maintained and administered at the offices of Defendant in the District of Minnesota, and Defendant operates a business in the District of Minnesota.

## FACTUAL ALLEGATIONS

7. Gatten began working for Life Time in approximately October of 2007.

8. In or around December of 2008, she became the Lead Coordinator at Life Time's Spa in the Savage, Minnesota facility.

9. In the summer of 2008, she became pregnant, and on April 19, 2009, she delivered her stillborn son, Jaxon Gatten. She took 6 weeks off from work after the birth of her son, and returned in or around June 8, 2009.

10. A few months later on December 1, 2009, she was promoted to the Spa Department Head position. At the time of her promotion, Rob Grey was the General Manager of the Savage facility.

2

11. In or around February, 2010, Joe Liotine ("Liotine") became the General Manager of the Savage facility.

12. Liotine tried to have weekly one-on-one meetings with his staff. At one of the first one-on-one meetings that Liotine had with Gatten, he brought up the birth of her stillborn son, and asked whether she could handle her job, or whether it was "all too much for her." He also suggested that she seek counseling.

13. In June of 2010, Gatten learned she was pregnant. Unfortunately, she miscarried a few weeks later. Gatten told Liotine about the pregnancy and the miscarriage.

14. In August of 2010, Gatten became pregnant again, and again told Liotine about it.

15. A few days later, on August 11, 2010, Liotine placed Gatten on a performance improvement plan ("PIP").

16. Up until the time that Gatten was placed on the PIP, she had never been told that her job was at risk because of her performance. In addition, although the PIP states that one of her "current unacceptable behaviors" was that she "consistently missed her monthly revenue & EBITDA goals," Gatten actually consistently met her monthly revenue or EBITDA goals.

17. In reference to the PIP, Liotine told Gatten that the various objectives listed in the PIP were very demanding and that if she didn't think she could accomplish them, he could find her a different role within Life Time.

18. Liotine also explained that one reason she was on a PIP was because of her personal life. When Gatten asked for clarification, he explained, that it was, among other things, because of her recent miscarriage.

19. The PIP gave Gatten 51 days, or until September 30, 2010, to improve her performance.

20. One of the issues raised in Gatten's PIP was her failure to meet inventory goals.

21. On Thursday, September 30th, the last day of Gatten's PIP, she was doing inventory, and began to miscarry. Although she was in a lot of pain, she tried to complete the inventory because she wanted to meet the objectives in her PIP.

22. Finally, at about 6 p.m., Gatten told Liotine that she was miscarrying and that she needed to go home. In response, Liotine told Gatten that she could leave, so long as she came back to finish up the inventory before midnight.

23. Gatten returned to work on Friday, October 1st, to complete inventory. On the following Monday, October 4th, she was terminated from the Spa Head position. At her termination meeting, Life Time asked if she wanted to accept an Assistant Spa Head position at another Spa (a demotion), and gave her two weeks to think about it.

24. Gatten initially accepted the Assistant position, but before she began working, she took a medical leave. Gatten did not return to the Assistant Spa Head role after her medical leave expired.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED
### (SEX DISCRIMINATION)

25.  Plaintiff incorporates the foregoing paragraphs of her Complaint by reference.

26.  42 U.S.C. § 2000e-2 provides that it is "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's...sex."

27.  42 U.S.C. § 2000e(k) states that the term "because of sex" includes, but is not limited to, "because of or on the basis of pregnancy, childbirth, or related medical conditions...."

28.  Defendant's conduct described herein violated 42 U.S.C. § 2000e-2.

29.  As a result of Defendant's violations of 42 U.S.C. § 2000e-2, Plaintiff has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000.  Plaintiff is also entitled to attorneys' fees and costs incurred in connection with this claim.

30.  Defendant committed the above-alleged facts with reckless disregard or deliberate disregard for the rights and safety of Plaintiff.  As a result therein, Plaintiff is entitled to punitive damages.

## COUNT II
## VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT
## (SEX DISCRIMINATION)

31. Plaintiff incorporates the foregoing paragraphs of her Complaint by reference.

32. Minn. Stat. § 363A.08, subd. 2 of the MHRA provides that it is unlawful for an employer "because of sex...to discharge an employee; or discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment."

33. Pursuant to Minn. Stat. § 363A.03, subd. 42, "sex" includes, but is not limited to, "pregnancy, childbirth, and disabilities related to pregnancy or childbirth."

34. Defendant's conduct described herein violated Minn. Stat. § 363A.08.

35. As a result of Defendant's violations of Minn. Stat. § 363A.08, Plaintiff has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Plaintiff is also entitled to attorneys' fees and costs incurred in connection with this claim.

36. Defendant committed the above-alleged facts with reckless disregard or deliberate disregard for the rights and safety of Plaintiff. As a result therein, Plaintiff is entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Theresa Gatten prays for judgment against Defendant Life Time Fitness, Inc. as follows:

1. For an award of damages arising from past and future loss of income, benefits, emotional distress and other damages in excess of $75,000.00;

2. For Plaintiff's costs, disbursements and attorneys' fees pursuant to law;

3. For all relief available under Title VII, including punitive damages;

4. For all relief available under the MHRA, including treble damages, punitive damages and a civil penalty against Defendant;

5. For such other and further relief available by statute; and

6. For such other and further relief as the Court deems just and equitable.

Dated: 10/11/11

NICHOLS KASTER, PLLP

_____
James H. Kaster (#53946)
   kaster@nka.com
Sofia Andersson-Stern (#0350709)
   andersson@nka.com
80 South Eighth Street
4600 IDS Center
Minneapolis, Minnesota 55402-2242
Telephone: (612) 256-3200

**ATTORNEYS FOR PLAINTIFF**